# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| US ECOLOGY, INC. and EQ INDUSTRIAL SERVICES, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 2017-0437-AGB |
| ALLSTATE POWER VAC, INC. and ASPV HOLDINGS, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Date Submitted: March 9, 2018
Date Decided: June 18, 2018

Stephen C. Norman and Daniyal M. Iqbal of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; David B. Hennes, Lisa H. Bebchick, and Joseph G. Cleeman of ROPES & GRAY LLP, New York, New York; *Counsel for Plaintiffs*.

Jon E. Abramczyk, D. McKinley Measley, and Alexandra M. Cumings of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; William T. Pruit of KIRKLAND & ELLIS LLP, Chicago, Illinois; Warren Haskel and Benjamin Cooper of KIRKLAND & ELLIS LLP, New York, New York; *Counsel for Defendants*.

**BOUCHARD, C.**

This case concerns a dispute over whether the seller of a business is entitled to reimbursement for approximately $1.6 million in insurance payments relating to that business that the seller paid or expects to pay after the transaction closed.

Before November 1, 2015, Allstate Power Vac, Inc. ("Allstate") was a subsidiary of EQ Industrial Services, Inc. ("EQ Industrial"), which in turn was a subsidiary of US Ecology, Inc. US Ecology purchased umbrella insurance policies to cover itself and its subsidiaries, including Allstate. The insurance policies relevant here are all occurrence-based, meaning that they provide coverage for events that occurred during the given policy period, regardless of when the eventual claim is brought.

When Allstate was US Ecology's indirect subsidiary, Allstate would reimburse US Ecology for payments it made to the insurers when the underlying claim related to Allstate's business. By all indications, this was an informal practice; no contractual agreement between US Ecology and Allstate has been identified obligating Allstate to reimburse US Ecology for these insurance payments.

On November 1, 2015, ASPV Holdings, Inc. ("Holdings") acquired all of the issued and outstanding stock of Allstate from EQ Industrial. The purchase agreement obligated Holdings (as the buyer) to reimburse EQ Industrial for certain insurance payments relating to Allstate that were made after the closing. But the purchase agreement was silent as to how to handle certain other insurance payments

that are referred to in this decision as the "Non-Covered Payments." After the transaction closed and Holdings and Allstate refused to reimburse US Ecology and EQ Industrial for the Non-Covered Payments, US Ecology and EQ Industrial filed this action seeking to recover these amounts. Defendants moved to dismiss the complaint for failure to state a claim for relief, and plaintiffs filed a cross-motion for partial summary judgment.

The specific entities asserting claims, and the specific entities against which the claims are asserted, prove to be important in this action. *EQ Industrial* asserts that *Holdings* breached the purchase agreement by not assuming Allstate's obligations for the Non-Covered Payments after the transaction closed. *US Ecology* asserts that *Allstate* has been unjustly enriched by US Ecology's payment of Non-Covered Payments.

For the reasons explained below, I find that Holdings and Allstate are not obligated to reimburse US Ecology and/or EQ Industrial for the Non-Covered Payments. EQ Industrial's contractual claims against Holdings fail because the purchase agreement does not create any obligation for Holdings to assume responsibility for the Non-Covered Payments. US Ecology's unjust enrichment claim against Allstate fails because it is barred by the release in the purchase agreement. Accordingly, defendants' motion to dismiss the complaint will be granted, and plaintiffs' cross-motion for partial summary judgment will be denied.

2

## I.    BACKGROUND

The facts recited herein are taken from the Verified Complaint filed on June 8, 2017 (the "Complaint")[1] and documents incorporated therein.[2]  Any additional facts are either not subject to reasonable dispute or subject to judicial notice.

### A.    The Parties

Plaintiff US Ecology is a leading North American provider of environmental services to commercial and governmental entities.  Until November 1, 2015, US Ecology indirectly owned all of the issued and outstanding stock of defendant Allstate through its wholly-owned subsidiary, plaintiff EQ Industrial.  EQ Industrial provides turnkey environmental services, specializing in industrial cleaning and maintenance, waste transportation, and environmental management services.

Allstate is an environmental services and waste management organization that operates under the brand "ACV Enviro."  Defendant Holdings acquired all of Allstate's issued and outstanding stock on November 1, 2015 as a result of the stock purchase agreement it entered into with EQ Industrial (the "Transaction").

---

[1] Dkt. 1.

[2] *See Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 818 (Del. 2013) (citation omitted) ("[P]laintiff may not reference certain documents outside the complaint and at the same time prevent the court from considering those documents' actual terms" in connection with a motion to dismiss).

**B.     US Ecology's Insurance Policies and the Non-Covered Payments**

US Ecology historically purchased certain automobile/general liability and workers' compensation insurance policies to provide coverage for itself and its subsidiaries, including Allstate (the "Policies").[3] The Policies are occurrence-based, meaning that they provide coverage for events that take place during their Policy periods regardless of when a claim ultimately is made against the insured.[4] The underlying claims at issue in this suit all relate to events that occurred while Allstate was US Ecology's indirect subsidiary.[5]

For its automobile/general liability insurance Policies, US Ecology has its insurers directly handle the claims and then reimburses the insurers for the amounts that the insurers paid that fall below the Policies' deductibles or above the Policies' limits.[6] For its workers' compensation insurance Policies, US Ecology pays out the claims and then the insurers reimburse US Ecology for amounts that fall above the Policies' deductibles and below the Policies' limits.[7] I refer to the insurance expenses borne by US Ecology, *i.e.*, the amounts paid below the Policies' deductibles and above the Policies' limits, as the "Non-Covered Payments." Before

---

[3] Compl. ¶ 14.

[4] Compl. ¶¶ 15-16.

[5] Compl. ¶ 18.

[6] Compl. ¶ 15.

[7] Compl. ¶ 16.

the Transaction, Allstate reimbursed US Ecology for Non-Covered Payments when the act or incident underlying a claim involved Allstate.[8]

## C. The Allstate Stock Sale

On August 4, 2015, Holdings and EQ Industrial entered into a stock purchase agreement (the "Purchase Agreement") pursuant to which Holdings would purchase all of the issued and outstanding capital stock of Allstate for $58 million.[9] US Ecology and Allstate are not parties to the Purchase Agreement.

Relevant to this action, Section 8.08 of the Purchase Agreement contains a release (the "Release"), which provides, in relevant part, that:

> Notwithstanding anything contained herein to the contrary, in consideration of the execution, delivery and performance by Seller and Buyer of this Agreement, effective as of the Closing, (i) Seller on behalf of itself and each of its past, present and future Affiliates . . . hereby RELEASES, WAIVES, ACQUITS AND FOREVER DISCHARGES Buyer, the Company and each Company Subsidiary . . . from any and all claims, demands, Proceedings, orders, losses, Liens, causes of action, suits, obligations, Contracts, agreements (express or implied), debts and liabilities of whatever kind or nature, whether in law or equity, that any Seller Releasing Party ever had or may now have against any Buyer Released Party to the extent related to the Company or any Company Subsidiary or Seller's ownership of the Shares or equity interests of any Company Subsidiary, whether known or unknown, suspected or unsuspected, that have accrued prior to the Closing or that accrue at or after the Closing as a result of any act, circumstance, occurrence, transaction, event or omission on or prior to the Closing Date.[10]

---

[8] Compl. ¶ 17.

[9] Compl. ¶ 19.

[10] Defs.' MTD Opening Ex. A § 8.08 (Dkt. 18).

The Release contains the following exclusion for claims asserted under the Purchase Agreement (the "Carve-Out"):

> Notwithstanding the foregoing, nothing in this Section 8.08 shall or be deemed to release any rights or obligations of any Seller Releasing Party or any Buyer Releasing Party (a) pursuant to and subject to the terms of this Agreement, including, without limitation, Section 8.07 [Employee Matters] and Article XI [Environmental Matters] hereof.[11]

The Transaction closed on November 1, 2015 (the "Closing"). After the Closing, Holdings and Allstate refused to reimburse US Ecology and EQ Industrial for the Non-Covered Payments related to Allstate's business that US Ecology had paid its insurers.[12] Specifically, US Ecology alleges that it has reimbursed insurers for Non-Covered Payments on more than fifty claims that US Ecology would have passed along to Allstate pre-Closing.[13] In the Complaint, US Ecology alleged that these Non-Covered Payments totaled $781,069, and projected that they would increase to a total of $1,533,563 by the time the last of the claims at issue is paid in full.[14]

---

[11] *Id.*

[12] Compl. ¶ 37.

[13] Compl. ¶¶ 2, 18.

[14] Compl. ¶¶ 38-39. During briefing, plaintiffs asserted that, as of September 18, 2017, the Non-Covered Payments totaled $819,072 and were projected to rise to a total of $1,573,535 by the time the underlying claims are fully resolved. Pls.' MPSJ Opening Br. 4 n.4 (citing Aff. of Matt Dahl ¶ 16) (Dkts. 19 & 20).

## II. PROCEDURAL HISTORY

On June 8, 2017, plaintiffs filed the Complaint, asserting four claims. Count I asserts that Holdings breached the Purchase Agreement by disclaiming certain Allstate liabilities (*i.e.*, responsibility for making the Non-Covered Payments) that were transferred under the Purchase Agreement. Count II asserts that Holdings breached the implied covenant of good faith and fair dealing inherent in the Purchase Agreement. Count III seeks a declaratory judgment that Holdings and Allstate are responsible for making the Non-Covered Payments. Count IV asserts that Allstate has been unjustly enriched by US Ecology's continuing payment of the Non-Covered Payments since the Closing.

On July 3, 2017, defendants filed a motion to dismiss the Complaint in its entirety under Court of Chancery Rule 12(b)(6) for failure to state a claim for relief. On August 4, 2017, plaintiffs filed a motion for partial summary judgment on Counts I, III, and IV. The court heard argument on both motions on March 9, 2018.

## III. THE PARTIES' CONTENTIONS

Defendants make a number of arguments in support of their motion to dismiss. With respect to Count I, defendants' lead argument is that the Release in the Purchase Agreement bars plaintiffs' breach of contract claim because the Non-Covered Payments are based on events that occurred before the Closing, *i.e.*, the

underlying injuries or accidents that triggered the claims at issue.[15] Defendants also argue that Holdings had no legal obligation before the Closing to reimburse EQ Industrial for the Non-Covered Payments, and that no term of the Purchase Agreement "separately creates such an obligation."[16]

With respect to plaintiffs' breach of the implied covenant of good faith and fair dealing and unjust enrichment claims (Counts II and IV), defendants argue that neither claim is actionable because the express contractual terms of the Purchase Agreement govern the parties' relationship and because those claims are barred by the Release. Finally, defendants argue that the claim for a declaratory judgment (Count III) must be dismissed because it is duplicative of plaintiffs' other claims.

Plaintiffs make essentially the same arguments in response to defendants' motion to dismiss as they do in support of their motion for summary judgment on Counts I, III, and IV.[17] As a threshold matter, plaintiffs contend that the Non-Covered Payments are Allstate's legal obligations. In support of that argument, plaintiffs point out that certain seller disclosure schedules in the Purchase Agreement include reserves for the Non-Covered Payments as a liability of Allstate, and that

---

[15] Defs.' MTD Opening Br. 10-11.

[16] Defs.' MTD Reply Br. 4-9 (Dkt. 35).

[17] According to plaintiffs, they "do not seek summary judgment with respect to their cause of action for breach of the implied covenant" because a favorable disposition of their summary judgment motion "will provide them complete relief and, accordingly, resolution of that cause of action is not necessary at this time." Pls.' MPSJ Opening Br. 1 n.1.

8

defendants took advantage of higher than expected Non-Covered Payments to drive down the purchase price in a post-Closing working capital adjustment.

With respect to EQ Industrial's breach of contract claim against Holdings, plaintiffs contend that the Release does not apply because the claim for reimbursement of the Non-Covered Payments arose post-Closing upon defendants' refusal to accept responsibility for them. In the alternative, plaintiffs argue that even if their claims fall within the scope of the Release, they are excluded by the Carve-Out in the Release. Plaintiffs further contend that the unjust enrichment claim (Count IV) is "sufficiently pled" because neither US Ecology nor Allstate is a party to the Purchase Agreement.[18] Finally, plaintiffs argue that they are "entitled to a declaratory judgment that Defendants are responsible for payment of the Non-Covered Payments from the time of the closing and going forward" on the theory that they are entitled to relief on their breach of contract and unjust enrichment claims.[19]

## IV. ANALYSIS

For the reasons explained below, plaintiffs have failed to state a claim upon which relief can be granted with respect to each of their claims. Accordingly,

---

[18] Pls.' MTD Answering Br. 28 (Dkt. 27).

[19] Pls.' MPSJ Opening Br. 23-25; Pls.' MPSJ Reply Br. 21 (Dkt. 36).

defendants' motion to dismiss the Complaint in its entirety will be granted, and

plaintiffs' motion for partial summary judgment will be denied.

### A. Legal Standards

The standards governing a motion to dismiss for failure to state a claim for

relief are well-settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and ([iv]) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[20]

Under Court of Chancery Rule 56(c), summary judgment "shall be rendered

forthwith if the pleadings, depositions, answers to interrogatories and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."[21]

### B. Count I Fails to State a Claim for Relief Because Plaintiffs Have Not Identified Any Provision of the Purchase Agreement that Holdings Breached

In Count I, EQ Industrial asserts that Holdings breached the Purchase

Agreement. To repeat, US Ecology and Allstate are not parties to the Purchase

---

[20] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (citations omitted).

[21] Ct. Ch. R. 56(c).

Agreement and, as such, the contract claim in Count I is not asserted on behalf of US Ecology or against Allstate.[22]

The parties' breach of contract arguments, outlined above, focus primarily on the effect of the Release and pay less attention to a threshold issue that is dispositive of Count I in my opinion: the lack of any provision in the Purchase Agreement that obligates Holdings to reimburse EQ Industrial for Non-Covered Payments. Somewhat astonishingly, plaintiffs did not identify in their Complaint a specific provision in the Purchase Agreement that Holdings allegedly breached. It was only when pressed at oral argument that plaintiffs explained that their breach of contract claim allegedly emanates from Section 1.01 of the Purchase Agreement,[23] which states as follows:

> On the terms and subject to the conditions of this Agreement, Seller will sell, transfer, assign, convey and deliver (or cause to be sold, assigned, transferred, conveyed and delivered) to Buyer, and Buyer will purchase from Seller, the Shares, free and clear of all Liens, for an aggregate purchase price equal to $58,000,000.00 (the "Purchase Price"), payable and subject to adjustment as set forth in Article II.[24]

---

[22] Defs.' MTD Opening Br. Ex. A at 1 (Preamble).

[23] Tr. 58 (Mar. 8, 2018) (Dkt. 49). Plaintiffs referred in passing to Section 1.01 of the Purchase Agreement in their opening brief in support of their motion for partial summary judgment, but they failed to explain how Holdings had breached that provision. *See* Pls.' MPSJ Opening Br. 6, 14.

[24] Defs.' MTD Opening Br. Ex. A § 1.01.

11

As defined in the Purchase Agreement, the term "Seller" refers to EQ Industrial, the term "Buyer" refers to Holdings, and the term "Shares" refers to "all of the issued and outstanding capital stock" of Allstate.[25]  It is undisputed that Holdings acquired all of the outstanding shares of Allstate in exchange for paying $58 million to EQ Industrial and, as a result, Allstate now operates as a wholly-owned subsidiary of Holdings.  And with respect to the first clause of Section 1.01, plaintiffs have never identified any other specific "term" or "condition" of the Purchase Agreement that Holdings allegedly breached.  In short, plaintiffs make no argument that Holdings breached any of the literal terms of Section 1.01 or any other provision in the Purchase Agreement.

Instead,  plaintiffs asserted in their Complaint in vague terms that "Holdings breached its obligation to [EQ Industrial] under the [Purchase Agreement] by disclaiming certain of [Allstate's] liabilities—*i.e.*, responsibility for making Non-Covered Payments—that were transferred under the [Purchase Agreement]."[26] When asked at argument to clarify the nature of the contractual breach, plaintiffs explained in equally vague terms that it was "a combination of the contract provision and the operation of Delaware law," as follows:  "Because that provision [Section

---

[25] *Id.* at 1 (Preamble).

[26] Compl. ¶ 46.

1.01] makes this a stock sale, by operation of Delaware law, all the assets and liabilities [of Allstate] transfer."[27]

As an initial matter, it is unclear from the record whether *Allstate* ever owed a legal obligation to reimburse EQ Industrial (or US Ecology) for the Non-Covered Payments. If Allstate owed such an obligation, presumably EQ Industrial and/or US Ecology would have asserted a breach of contract claim directly against Allstate. Tellingly, no such claim has been asserted. But assuming for the sake of argument that the Non-Covered Payments constitute a liability of Allstate, plaintiffs' argument that *Holdings* breached Section 1.01 of the Purchase Agreement by failing to reimburse EQ Industrial for an obligation of *Allstate* is a *non sequitur*.

"[O]ur corporation law is largely built on the idea that the separate legal existence of corporate entities should be respected—even when those separate corporate entities are under common ownership and control."[28] Plaintiffs correctly point out that "it is a general principle of corporate law that all assets and liabilities are transferred in the sale of a company effected by a sale of stock."[29] Thus, all of Allstate's pre-Closing assets and liabilities remained with Allstate post-Closing.

---

[27] Tr. 58 (Mar. 8, 2018).

[28] *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1038 (Del. Ch. 2006) (Strine, V.C.) (citing *Stauffer v. Standard Brands, Inc.*, 178 A.2d 311, 316 (Del. Ch. 1962)).

[29] Defs.' MTD Answering Br. 21-22 (citing *In re KB Toys Inc.*, 340 B.R. 726, 728 (D. Del. 2006)). *See also Viking Pump, Inc. v. Century Indem. Co.*, 2 A.3d 76, 100 (Del. Ch. 2009)

Plaintiffs' argument goes off the rails, however, when they argue that *Holdings* breached the Purchase Agreement by failing to assume all of *Allstate's* liabilities that remained with Allstate after ownership of Allstate was transferred to Holdings. In the Transaction, Holdings purchased (and thus now owns) all of Allstate's stock in exchange for approximately $58 million—it did exactly what it promised to do under Section 1.01 of the Purchase Agreement. If Allstate owed a reimbursement obligation with respect to the Non-Covered Payments, then Allstate, *not Holdings*, would be the correct entity from which EQ Industrial (or US Ecology) should seek a recovery.

The only legally coherent way for *Holdings* to have breached the Purchase Agreement for not reimbursing EQ Industrial for *Allstate's* purported obligations is not "by operation of Delaware law"[30] as a result of the Transaction, as plaintiffs argue, but by the Purchase Agreement independently creating a contractual reimbursement obligation. The parties to the Purchase Agreement are sophisticated business entities that were represented by experienced counsel when negotiating a sixty-one page contract to effectuate a $58 million transaction.[31] They certainly

(Strine, V.C.) (citing *KB Toys*, 340 B.R. at 728) ("The familiar default rule in stock sales is that a change in the ownership of a company does not affect the rights and liabilities of the company.").

[30] Tr. 58 (Mar. 8, 2018).

[31] *See* Defs.' MTD Opening Br. Ex. A at 50-51 (listing outside counsel).

14

could have included an explicit provision obligating Holdings to reimburse EQ Industrial for the Non-Covered Payments. Indeed, the parties to the Purchase Agreement agreed to impose on Holdings certain other post-Closing insurance reimbursement obligations concerning Allstate.[32] But when it came to the Non-Covered Payments, they chose not to do so.[33]

Plaintiffs cite *Viking Pump, Inc. v. Century Indemnity Company*[34] for the proposition that because Allstate "gets the benefit of coverage under the [] Policies for the Underlying Claim," Allstate also must assume "the corresponding liabilities—the Non-Covered Payments."[35] This statement mischaracterizes the relevant holding in *Viking Pump*, a decision that actually supports defendants.

In *Viking Pump*, the court found that a parent's former subsidiary was entitled to exercise insurance rights under a policy that the parent had purchased for the

---

[32] *See, e.g.*, Defs.' MTD Opening Br. Ex. A at Amendment No. 1 to Stock Purchase Agreement § 8.09(f) (obligating Holdings to reimburse EQ Industrial for the medical and dental insurance of "Continuing Employees" of Allstate and its subsidiaries).

[33] *See Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1061-62 (Del. Ch. 2006) (Strine, V.C.) ("Delaware . . . respect[s] the ability of sophisticated businesses . . . to make their own judgments about the risk they should bear . . . recognizing that such parties are able to price factors such as limits on liability. . . . [T]he common law ought to be especially chary about relieving sophisticated business entities of the burden of freely negotiated contracts.").

[34] 2 A.3d 76 (Del. Ch. 2009).

[35] Pls.' MTD Answering Br. 21.

former subsidiary while it was still a subsidiary.[36] Essential to the court's holding was the fact that the parent explicitly assigned, and the subsidiary assumed, the insurance rights before a sale of the subsidiary to a third party.[37] Here, there was no analogous assignment and assumption agreement between US Ecology and Allstate regarding insurance rights and obligations under the Policies for the Non-Covered Payments. Thus, the *Viking Pump* decision actually cuts against plaintiffs' argument because it reinforces the point that the parties here were fully capable of contractually allocating to Holdings obligations concerning Allstate, which they did for certain matters but not for the Non-Covered Payments.

In sum, given the Complaint's failure to identify any provision in the Purchase Agreement obligating Holdings to reimburse EQ Industrial for the Non-Covered Payments, Count I fails to state a claim for breach of contract. Based on this conclusion, it is unnecessary for the court to address the parties' other arguments pertaining to Count I.

### C. Count II Fails to State a Claim for Breach of an Implied Covenant

In Count II, EQ Industrial asserts that Holdings breached the implied covenant of good faith and fair dealing on the theory that "Holdings understood that, once the

---

[36] *Viking Pump*, 2 A.3d at 82.

[37] *Id*. at 97-98.

16

[Purchase Agreement] was effected, all of the liabilities of [Allstate]—including the Non-Covered Payments under the [Policies]—would be transferred to Holdings."[38] Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails because it is conclusory and impermissibly repackages plaintiffs' breach of contract claim.

The implied covenant is "employed to analyze unanticipated developments or to fill gaps in [a] contract's provisions."[39] "Existing contract terms control, however, such that implied good faith cannot be used to circumvent the parties' bargain, or to create a 'free-floating duty unattached to the underlying legal documents.'"[40] Thus, "the implied covenant only applies where a contract lacks specific language governing an issue and the obligation the court is asked to imply advances, and does not contradict, the purposes reflected in the express language of the contract."[41]

Plaintiffs devote a single paragraph in their answering brief in defense of Count II, asserting simply that if their "breach of contract claim is dismissed, the alternative claim is not duplicative."[42] Plaintiffs do not contend that an obligation

---

[38] Compl. ¶ 50.

[39] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (citations omitted).

[40] *Id.* (citations and alterations omitted).

[41] *All. Data Sys. Corp., v. Blackstone Capital Partners V L.P.*, 963 A.2d 746, 770 (Del. Ch. 2009) (Strine, V.C.) (citation omitted), *aff'd*, 976 A.2d 170 (Del. 2009).

[42] Pls.' MTD Answering Br. 27.

should be implied into the Purchase Agreement to address an unanticipated development. Nor could they. As noted above, the parties to the Purchase Agreement anticipated that there were circumstances under which Holdings would be obligated to reimburse EQ Industrial for certain Allstate-related insurance payments.[43] They chose not to do so, however, with respect to the Non-Covered Payments.

Plaintiffs also fail to identify, as they must, a specific gap in the Purchase Agreement to be filled by the implied covenant.[44] Their contention that the parties to the Purchase Agreement understood that "*all* of the liabilities of [Allstate] . . . would be transferred to Holdings"[45] is not a "gap," but rather an impermissible rehashing of plaintiffs' breach of contract claim, *i.e.*, that Holdings failed to assume all of Allstate's legal liabilities in violation of Section 1.01 of the Purchase Agreement.[46] Accordingly, Count II fails to state a claim for relief.

---

[43] *See supra* note 32 and accompanying text.

[44] *See Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *3 (Del. Ch. Jan. 30, 2015) ("To state a claim for breach of the implied covenant, a litigant must allege a specific obligation implied in the contract, a breach of that obligation, and resulting damages.") (internal quotations and citations omitted).

[45] Compl. ¶ 50 (emphasis added).

[46] *See Dieckman v. Regency GP LP*, 2018 WL 1006558, at *3 (Del. Ch. Feb. 20, 2018) (ORDER) ("Defendants' motion to dismiss Count II [breach of the implied covenant] is GRANTED because it impermissibly repackages Count I, plaintiff's breach of contract claim.").

### D. The Unjust Enrichment Claim is Barred by the Release

In Count IV, US Ecology asserts a claim for unjust enrichment against Allstate. According to the Complaint, Allstate has been unjustly enriched by US Ecology's post-Closing payment of the Non-Covered Payments, "which at all times have been solely the responsibility of [Allstate]."[47]

"The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[48] "Unjust enrichment is in essence a gap-filling remedy, which can be sought in 'the absence of a remedy provided by law.'"[49]

When the plain terms of a contract release a claim for unjust enrichment, courts will enforce the release, and the unjust enrichment claim will be barred.[50] Here, defendants argue that US Ecology's unjust enrichment claim was released in

---

[47] Compl. ¶ 59. Notably, the allegation that the Non-Covered Payments "at all times have been *solely* the responsibility of [Allstate]" is inconsistent with the premise of Count I, which asserts that they were the responsibility of Holdings after the Closing. *Id.* (emphasis added).

[48] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (citation omitted).

[49] *Seibold v. Camulos Partners LP*, 2012 WL 4076182, at *11 (Del. Ch. Sept. 17, 2012) (Strine, C.) (citation omitted).

[50] *See Seven Invs., LLC v. AD Capital, LLC*, 32 A.3d 391, 398 (Del. Ch. 2011) ("Because Seven Investments released all claims relating to the Purported Accumulated Expenses, Seven Investments cannot bring its claim in Count III to recover the amounts paid under a theory of unjust enrichment.").

Section 8.08 of the Purchase Agreement where "[EQ Industrial] and its 'Affiliates' (which includes US Ecology) unambiguously released [Allstate] (the "Company") and [Holdings] from claims, obligations, and liabilities, including those accruing after the Closing resulting from a pre-Closing event."[51] I agree.

As mentioned above, the Release provides that "Seller on behalf of itself and each of its past, present and future Affiliates" releases "Buyer [and] the Company" from "any and all claims . . . that have accrued prior to the Closing or that accrue at or after the Closing as a result of any act, circumstance, occurrence, transaction, event or omission on or prior to the Closing Date."[52] The term "Affiliates" is defined to include US Ecology,[53] and the "Company" refers to Allstate.[54] The Purchase Agreement expressly includes Allstate as a third-party beneficiary for purposes of the Release,[55] and the Carve-Out in the Release for claims under the Purchase Agreement plainly does not apply to a claim for unjust enrichment, the premise of which is the absence of a remedy provided by law.

---

[51] Defs.' MTD Reply Br. 20 (citing Defs.' MTD Opening Br. Ex. A §§ 8.08, 15.07(b)); *see also* Defs' MPSJ Answering Br. 17.

[52] Defs.' MTD Opening Br. Ex. A § 8.08.

[53] *Id.* § 15.07(b) (defining "Affiliate" to mean "with respect to any specified person, any other person directly or indirectly controlling . . . such specified person").

[54] *Id.* at 1 (Preamble).

[55] *See id.* § 15.02 ("[T]he Buyer Released Parties shall be third party beneficiaries with respect to Section 8.08, with the right to enforce Section 8.08."). Allstate (the "Company") is a "Buyer Released Party." *Id.* § 8.08.

Plaintiffs argue that the Release's scope does not cover the unjust enrichment claim because the claim accrued post-Closing as a result of defendants' post-Closing failure to assume responsibility for the Non-Covered Payments.[56] This argument, however, is inconsistent with the plain language of the Release.

Plaintiffs themselves allege that "[a]s of the filing of this Complaint, there are over 50 active claims that accrued against various . . . Policies while [Allstate] was [US Ecology's] subsidiary and that remain to be resolved."[57] These "50 active claims," which admittedly accrued before the Closing, are the "legacy" claims for which plaintiffs seek reimbursement in this action.[58] But even if one treated plaintiffs' claims for reimbursement for the Non-Covered Payments as accruing after the Closing, the Release still bars those claims if they accrued "as a result of any act, circumstance, occurrence, transaction, event or omission on or prior to the Closing Date."[59] That is the case here. The underlying insurance claims and plaintiffs' claims for reimbursement are inextricably linked, and are indisputably the result of automobile accidents, worker injuries, and the like that occurred before the Closing.

---

[56] Pls.' MTD Answering Br. 12.

[57] Compl. ¶ 18.

[58] Compl. ¶ 6.

[59] Defs.' MTD Opening Br. Ex. A § 8.08.

Thus, the plain terms of the release bar US Ecology's claim for unjust enrichment against Allstate.[60]

Finally, apart from the legal deficiency of the unjust enrichment claim, plaintiffs' attempt to seize the equitable high ground in this case is open to question. US Ecology is the owner of the Policies and implicitly acknowledges that it has the right to cut off Allstate's insurance coverage, thus ceasing the continued incurrence of Non-Covered Payments.[61] A reasonable inference from US Ecology's failure to terminate Allstate's coverage post-Closing (particularly after defendants made clear their intention not to reimburse plaintiffs for the Non-Covered Payments) is that US

---

[60]As discussed above, EQ Industrial agreed to the Release on behalf of itself and its "Affiliates," which includes its parent, US Ecology. Relying on this language, defendants argued in three briefs submitted in connection with the pending motions that US Ecology is bound by the Release. *See* Defs.' MTD Opening Br. 22 ("US Ecology's claims for reimbursement for insurance charges related to pre-Closing events clearly fall within the scope of the [] Release [], and thus US Ecology's unjust enrichment claim cannot stand."); Defs.' MTD Reply Br. 20 ("US Ecology's claim for reimbursement of payments made under the [] Policies for pre-Closing events fall squarely within the scope of the [] Release [], and US Ecology's unjust enrichment claim must be dismissed."); Defs.' MPSJ Answering Br. 17 ("US Ecology's claim for reimbursement of payments made under the [] Policies for pre-Closing events falls squarely within the scope of the [] Release []; thus, US Ecology's unjust enrichment claim must be denied."). Plaintiffs made no argument to the contrary even though US Ecology is not a signatory of the Purchase Agreement. Thus plaintiffs waived any argument that US Ecology is not bound by the Release. *See Emerald Partners v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) (citation omitted) ("Issues not briefed are deemed waived.").

[61] *See* Pls.' MTD Answering Br. 17 n.7 ("Defendants are welcome to concede that they are not entitled to coverage under the [] Policies on a going-forward basis, in which case Plaintiffs will notify the relevant insurers to cease making payments thereunder.").

Ecology found it to be in its economic interest not to do so, presumably so as not to disturb the economic structure of umbrella insurance Policies that cover itself and its various subsidiaries.[62]  In any event, Count IV fails to state a claim for relief because it is barred by the Release.

### E. Plaintiffs are Not Entitled to a Declaratory Judgment that Defendants are Responsible for the Non-Covered Payments

In Count III, plaintiffs seek "declarations as to Defendants' obligations to pay for the Non-Covered Payments under the [Purchase Agreement] on a historical and going-forward basis."[63]  This claim is duplicative of plaintiffs' breach of contract and unjust enrichment claims and thus fails for the same reasons that those claims fail.[64]  Thus, Count III fails to state a claim for relief.

## V. CONCLUSION

For the reasons explained above, the Complaint fails to state any claims for relief.  Accordingly, defendants' motion to dismiss is GRANTED, and defendants' cross-motion for partial summary judgment is DENIED.  The Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

---

[62] *See* Tr. 36-37 (Mar. 8, 2018).

[63] Pls.' MPSJ Opening Br. 24.

[64] *See Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *29 (Del. Ch. Nov. 26, 2014) ("Because the declaratory judgment count is completely duplicative of the affirmative counts of the complaint, [it] is dismissed.").